Anton A. Ewing (not an attorney)
3077 B Clairemont Drive, #372
San Diego, CA 92117
619-719-9640 (do not telemarket)

Plaintiff pro se

FILED
AUG 15 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ______ DEPUTY

**UNITED STATES FEDERAL DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

Anton A. Ewing,

Plaintiff,

vs.

GG HOMES, INC,

Defendant

Case No.: 24CV1223-JLS-MSB

**FIRST AMENDED COMPLAINT**

1. **47 U.S.C. §227 (TCPA)**
2. **PC §637.2 / 632.7 (CIPA)**
3. **CIVIL CODE §1770(A)(22)(A)**

Plaintiff Anton A. Ewing (herein "Plaintiff" or "Ewing") brings this civil Complaint for money damages as provided by statute and injunctive relief, demanding a trial by jury, against Defendant GG HOMES, Inc., to stop said defendant from violating the Telephone Consumer Protection Act and the Telemarketing Sales Rule by sending telemarketing text messages and calling with prerecorded artificial voice messages to Plaintiff's personal residential cellular phone (ending in -9640), which is registered on www.donotcall.gov (the National

Do Not Call Registry) without permission and without consent of Plaintiff.

## MANDATORY RULES OF CIVILITY IN THE SOUTHERN DISTRICT

1. Civil[1] Local Rule 2.1 provides:

   a. "We expect lawyers to treat adverse witnesses, litigants and opposing counsel with *courtesy, fairness and respect*."

   b. "We expect lawyers to conduct themselves so that they may conclude each case *amicably* with the opposing party."

   c. "We-- judges, lawyers, court staff, parties—all have a responsibility in ensuring that we preserve the legacy of this institution by conducting ourselves according to the Golden Rule—to *treat others as we ourselves would like to be treated*[2]."

2. Civil Local Rule 2.2 provides:

   a. "The "Standing Committee on Discipline" will investigate any charge or information, referred by one of the judges, that any member of the

[1] Paragraphs 1 to 5 herein were necessitated by Ruane's vituperative filing at PageID.59.

[2] Ms. Ruane, if you treat me with disrespect and make ad hominem attacks, you can expect a forceful response. Do not think for a second that you will get away with disparaging me in the public record. If you have something to say to me, then pick up the phone and tell me. Otherwise, follow the rules of civility and stop the unprofessional attacks. I have conducted over a dozen cases with your firm so act like you would toward an attorney. The Honorable District Judge Sammartino has no time to waste on your petty insults. They do not motivate her in the manner that you think. Engaging on name calling is not going to win this case for your client.

bar of this court or that any attorney permitted to practice in the Court has been guilty of unprofessional conduct."

b. "In the event any attorney engages in conduct which may warrant discipline or other sanctions, the Court or any judge may, in addition to initiating proceedings for contempt under Title 18 U.S.C. 401 and Rule 42, Fed. R. Crim.P., or imposing other appropriate sanctions, refer the matter to the disciplinary body of any court before which the attorney has been admitted to practice."

3. 18 USC §401 states: "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

4. "Matters are 'scandalous' if they 'cast a cruelly derogatory light on a party or other person.'" *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1062 (C.D. Cal. 2017) (quoting *In re TheMart.com, Inc. Sec. Litig.*,

114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)). *See also Collura*, 2012 U.S. Dist. LEXIS 180830, 2012 WL 6645532, at *8 (identifying as strike-worthy unnecessary criticisms of an opposing party's attorney)

5. Courts have struck allegations that levy insults at parties or attorneys, 2012 U.S. Dist. LEXIS 180830, [WL] at *7-8, or that raise prior instances of alleged misconduct "for no other reason than to cast [a party] in a negative light," *Tuck v. Guardian Prot. Servs. Inc.*, No. 15-CV-1376 JLS (JLB), 2017 U.S. Dist. LEXIS 39896, 2017 WL 1047122, at *2 (S.D. Cal. Mar. 20, 2017).
6. Attorney Patrice Ruane has been put on fair notice of the above.
7. Attorney Patrice Ruane wrote PageID.59 at lines 2 to 8 and signed it under Rule 11 of the Federal Rules of Civil Procedure.
8. A text message is not a prerecored voice.
9. The calls complained of herein were advertising because the callers tried to get Plaintiff to buy their real estate services by signing up with its real estate corporation to list Plaintiff's property for sale.
10. The calls encouraged the purchase of Defendant's real estate listing services and to pay Defendant a commission on the sale of Plaintiff's home.
11. Thus the calls were advertising.

12.This is not a fraud lawsuit and does not require Plaintiff to "plead with particularity." The TCPA is a strict liability cause of action. The TCPA is not a negligence type lawsuit.

13.Plaintiff did not walk away from any of the telemarketing calls from Defendant with the belief that it wanted to merely buy something from Plaintiff but rather that Defendant wanted to sell Plaintiff their real estate services for a fee (aka commission), which clearly Luke Chece is licensed to do by the California Department of Real Estate.

14.Plaintiff, as shown below, was called and texted, more than once within a 12 month period within the prior four years.

15.GG Homes was not in an agency relationship with a third party that made the calls; rather, GG Homes, according to a confession by one of its own employees (Luke Chece), directly contacted Plaintiff more than once within the last twelve months. The dates and times articulated below are specific non-conclusory facts. Moreover, the law only requires a short and plain statement[3] showing that the pleader is entitled to relief.

---

[3] A pleading that states a claim for relief must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

16.GG Homes does not have any internal procedures to prevent or prohibit calling Plaintiff's DNC registered phone number. Luke admitted this fact when prompted by Plaintiff during the first July 11th call.

17.In 24CV1305JAH-MSB, GG Homes employed Steven Nguyen to call Plaintiff Collette Stark from 760-502-1850 on July 21, 22 and 23.

## PARTIES

18.Plaintiff Anton A. Ewing is a natural person as defined by 47 USC §153(39), and a resident of San Diego, California at all times relevant to this action. Plaintiff was present in San Diego at all times relevant to this action and was also the owner and sole user of personal, private residential cellular phone number 619-719-9640[4].

19.Plaintiff has been repeatedly called and texted by GG HOMES, INC, directly, without consent, permission or authority, all in direct violation of express commands by Plaintiff to stop, cease and desist and by virtue of

---

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

[4] For clarity, this number is not a hardwired landline. This number is cellular phone. No cause of action under PC §632 is alleged. Arguing that cellular calls require "confidential communications" is frivolous.

registration on www.donotcall.gov as well as Plaintiff's express demands directly to Defendant to stop all future calls and texts.

20. Defendant GG HOMES, INC is a California corporation, that conducts business throughout this District, in San Diego, California. Defendant GG HOMES, INC is a "person" as defined by 47 USC §153(39). Defendant is in the business of selling real estate and representing buyers as well as sellers. Defendant engages in telemarketing to sell its real estate services to obtain clients. Defendant uses the wires of the United States to harass and annoy DNC registered telephone owners with their solicitation calls to sell real estate in California.

21. Defendant GG HOMES, Inc is located in California. Plaintiff is only suing GG HOMES, INC and no other persons or parties, named or unnamed, whether as Does or otherwise. This is not an "either/or" lawsuit. There is one party on the defense side and there are no third parties or agents alleged to have done any of the violative conduct.

22. Any prior reference to "loans or mortgages" was a scrivener's error and has herein been rectified.

23. GG Homes uses many, many different phone numbers and short codes, not just ones from area codes 619, 760 and 858. They do this to disguise who

they really are in the hopes that an offended victim of their telemarketing harassment scam would not be able to easily file a complaint.

24. A recent BBB[5] complaint asserts the following:

a. "Initial Complaint 07/11/2024

Complaint Type: Customer Service Issues
Status: Answered
Im having a problem with this company and I have called them multiple times. But it seems like they just want stop calling my phone and asking me if the house at ******************** is for sale, it is not for sale to anyone. There is not a for sale sign on this property. They send checks but, there is no wants to sale. How can I stop ?? these people from all this harassment. It started after Covid and it doesnt seem to stop. Do I need to go to court to make these people stop? Im respectfully asking for your help. Please help me!

Business response 07/25/2024

Thank you for bringing this to our attention, and I apologize for any inconvenience you have experienced. We take your concerns very seriously and aim to resolve this matter promptly.

We have taken immediate action to resolve this- we have removed your address from all of our lists, and double checked to ensure you will not be contacted again. We have removed the following numbers and have ensured they will not be contacted again, if they are incorrect please let me know: *********************6, **********. We are thy We respect your privacy and do not wish to cause any discomfort. Our intention is to reach out to potential

[5] https://www.bbb.org/us/ca/san-diego/profile/real-estate-services/gg-homes-1126-172020413/complaints

sellers, and we apologize if our efforts have been perceived poorly.

We are so sorry to have bothered you and aim to rectify this situation immediately."

25. Another BBB complaint on 8/1/2024 shows that Defendant engages in a scam to attempt to get listings of homes to earn a real estate commission:

a. "Susan C
1 star
08/01/2024

When I attempt to locate information on a company called "I Buy SD"- this business continues to come up, so I assume the two are related. My complaint about this company is- despite NUMEROUS requests for no contact- this company continues to send us requests to buy our property. They have called numerous times using different numbers- and have sent us requests to buy our property using different names on the property address. I was nice at first but after calling for 6 months now numerous times and speaking with several employees (all who promised to remove our name and address from their mailing lists). Nothing we have done has gotten them to stop contacting us and it is now harassment. The last time I called was early June I told them I would register a complaint if we continued to get offers to buy a property which is not for sale and we have no plan to sell."

26.Defendant GG Homes, Inc was sued for TCPA violations in the following cases filed in this federal district:

a. *Charman vs. GG Homes, Inc*, 20-cv-1298 filed 7/9/2020

b. *Stark vs. GG Homes, Inc*, 20-cv-1913 filed 9/24/2020

c. *Morrison vs. GG Homes, Inc*, 21-cv-186 filed 2/1/2021

d. *Rashidi vs. GG Homes, Inc*, 21-cv-209 filed 2/3/2021

e. *Wilbor vs. GG Homes, Inc*, 21-cv-226 filed 2/8/2021

f. *Gross vs. GG Homes, Inc*, 21-cv-271 filed 2/16/2021

g. *Stark vs. GG Homes, Inc, 24-cv-1305 filed on 7/26/2024*

## JURISDICTION AND VENUE

27. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). This is not a "diversity" of citizenship case. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012)

28. This Court has personal jurisdiction over the Defendant since the Defendant conducts business in this District and specifically marketed to Plaintiff within this District relating to the business that it conducts here. Venue is proper in this District because Plaintiff resides in this District and the events leading to this case occurred in this District.

29. The Court has ancillary and supplemental jurisdiction, in its discretion, over the attendant state law claims that are part of a common nucleus of operative facts. Plaintiff is suing for violation of CIPA, PC §632.7 et seq. – illegal cell phone recording, Civil Code §1770(a)(22)(A)- illegal prerecorded voice

message to a cell phone without consent and without a prior live operator introduction.

30.Defendant GG HOMES, INC has purposefully directed its solicitation activities into California and has knowingly, intentionally and willfully recorded its conversations with Plaintiff without disclosing the fact of recording at the beginning of the calls.

## INTRODUCTION

31. FRCP 8 requires a "short and plain statement." The prima facie elements of a TCPA violation are: (1) the caller called a cellular telephone number; (2) using an ATDS or an artificial or prerecorded voice; (3) without the recipient's prior express consent. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). *See also* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1) & (2).

32. Defendant GG Homes, Inc directly made and initiated a telemarketing call to Plaintiff on June 28, 2024 from 619-816-3745 at 7:55 AM, to sell Plaintiff its real estate services. GG Homes took the steps necessary to physically place said call. The call was placed by an ATDS, as determined by the bubble-popping sound and the long pause and contained a prerecorded message at the beginning of the call. After the pre-recorded message was

finished, a GG Homes employee named "Luke" came on the phone to ask detailed questions about Plaintiff's real estate and encourage Plaintiff to purchase the real estate services offered by his employer. Plaintiff did not provide Defendant GG Homes, Inc with prior express consent to make the call. Plaintiff's phone number, 619-719-9640, is registered on www.donotcall.gov.

33. Rule 8 does not require any more than that articulated and alleged in paragraph 32 above.

34. On July 11, 2024, at 5:35 PM, Plaintiff received the following text from GG Homes, Inc from 858-229-3792 to 619-719-9640:

a. "*I am connecting you in a group message with my partner, Seth, in preparation for Monday's property consultation @11am.*"

35. On July 11, 2024, Plaintiff received an email from GG Homes that stated:

*"I hope this email finds you well. It was a pleasure connecting with you earlier today and I can't thank you enough for the advice about the 2553 form for the IRS - already getting that going. I hope we can reciprocate the notion of professionalism in getting you the right offer on McGraw Street, and enable you to start your new beginnings up in LA."*

36. The email signature line showed:

--



Respectfully,

Luke Chece
Acquisitions Manager
iBuySD-GG Homes

37.Luke Chece stated, to Plaintiff while on the phone on one of the telemarketing calls, that GG Homes created the pre-recorded messages and uses a computer to generate, call, dial and play each solicitation message to home owners in San Diego. On this basis, Plaintiff alleges that it was Defendant GG Homes, and not a third party, that made and directly initiated the telemarketing calls to Plaintiff's phone by Defendant.

38.Plaintiff has registered his phone on www.donotcall.gov, 619-719-9640, which can be verified at www.donotcall.gov.

39. Cell phone numbers can be registered on the do-not-call registry and are equally protected by the do-not-call prohibition in 47 C.F.R. §64.1200(c)(2). "(e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991." 47 C.F.R. §64.1200(e). Each of Defendant's calls thus violated 47 C.F.R.§64.1200(c)(2).

40. 47 C.F.R. §64.1200(d)(1) requires that companies engaged in telemarketing must provide a copy of their written do-not-call policy, "Upon demand." Base statutory damages for this violation are $500, which may be trebled in the discretion of the court up to $1,500 per violation if Defendant's violation was willful or knowing. 47 U.S.C. §227(c)(5). Plaintiff alleges that Defendant's violation of 47 C.F.R. §64.1200(d)(1) was willful and knowing, within the meaning of 47 U.S.C. §227(c)(5) and 47 U.S.C. §312(f)(1)[6].

41. 47 C.F.R. §64.1200(d)(4) requires telemarketers to provide consumers with 1) their name, 2) the accurate name of company they are calling from or on behalf of, as well as 3) a phone number or mailing address of that company:

"(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, **the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted**. The telephone number

[6] The term "willful", when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation of the Commission

provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges." [*Emphasis added.*]

42. 47 C.F.R. §64.1200(d)(2) states that, "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards: (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list." Defendant has failed to train its staff and personnel.

43. 47 C.F.R. §64.1601(e)(1) requires that "Caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer. It shall not be a violation . . . to substitute . . . the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. The telephone number so provided must permit any individual to make a do-not-call request during regular business hours." Defendant has failed, intentionally and knowingly, in this regard.

44. Defendant's caller ID broadcasts failed to comply with this requirement in two distinct ways: by failing to provide a company name and failing to provide an accurate telephone number at which a do-not-call request could be made. Base statutory damages for these violations are $500 per violation, which may be trebled in the discretion of the court up to $1,500 per violation if Defendant's violations were willful or knowing. 47 U.S.C. §227(b)(3). Plaintiff alleges that Defendant's violations of 47 C.F.R. §64.1601(e)(1) were willful and knowing, within the meaning of 47 U.S.C. §227(b)(3) and 47 U.S.C. §312(f)(1).

45. 16 C.F.R. §310.4(a)(7) states that "It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct . . . (7) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call, provided that it shall not be a violation to substitute . . . the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable organization's customer or donor service telephone number, which is answered during regular business hours."

46. Based on Plaintiff's personal knowledge, the initial part of each call was a prerecorded voice, then some time past, and then, on at least one call, Defendant's employee "Luke" admitted to Plaintiff, at the end of the 7/11/2024 telemarketing call, when asked by Plaintiff, that Defendant does in fact record all of its solicitation calls.

47. Any and all calls into California must disclose, at the beginning of the call, that said call is being recorded. Waiting until the very end of the call to admit, when asked, that it was recorded is too late. Liability for recording attaches when there is a call, to a cellular phone, where there is a reasonable expectation of privacy and disclosure of the fact of recording does not occur at or near the beginning of said call. Cellular phones do not require confidential private information to be exchanged to be protected by CIPA.

48. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

49. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging

the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

50. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

51."'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

52. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true

whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

53. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

54. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

55. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (*emphasis added*).

## COMMON ALLEGATIONS

56. Defendant GG HOMES, Inc is a real estate firm, selling its services throughout San Diego County. The calls made to Plaintiff were clearly solicitation calls as the caller was attempting to get Plaintiff to buy their real estate services and the caller was a licensed real estate sales person licensed by the California Department of Real Estate.

57. Defendant GG HOMES, Inc conducts telemarketing campaigns to sell its services to consumers throughout southern California. As part of those campaigns, unsolicited text messages are sent to cell phones of consumers across the state by Defendant GG HOMES, Inc. Plaintiff can assert and allege this detailed fact because Defendant's employee, Luke, expressly admitted it. This is not some vague fact. This is a very specific fact.

58. In placing unsolicited text messages to consumers, Defendant GG HOMES, Inc sent multiple text messages to phone numbers that are registered on the DNC, such as Plaintiff's number (-9640).

59. In response to these text messages, Plaintiff Ewing files this lawsuit seeking injunctive relief requiring Defendant GG HOMES, Inc to cease from violating the Telephone Consumer Protection Act, as well as an award of

statutory damages to Plaintiff Ewing and costs ($405 filing fee plus service of process fees).

60. The text messages were generic in nature and did not address Plaintiff by name.

61. The text messages did not offer a way to opt out or to stop future solicitation texts.

62. At the very beginning of each call (not text), Plaintiff Ewing heard a very clear "bubble popping" type sound followed by a rather long pause before the artificial-voice prerecorded message began to play on the call. Plaintiff was required to hit "1" to be transferred to a live operator. This happened on each and every call[7] that is the subject of this lawsuit. Many courts have held that this very same bubble popping and long pause are highly indicative of an ATDS being used. However, the Defendant fails to comprehend that it is also violation of section 227(b)(1)(A) to use, and Defendant did in fact use, an artificial pre-recorded voice message to obtain a subsequent transfer to a live operator employee of Defendant. Additionally, the text messages were sent via a "short code" and not a full ten-digit telephone number. This

[7] Plaintiff is not asserting or implying that a text message is a voice call. Texts do not have bubble popping sounds.

further indicates that an ATDS must have been used to blast out the spam text messages.

63. Plaintiff and Defendant do not have a pre-existing business relationship. Plaintiff has never been a customer or client of Defendant's business.

64. Specifically, the hardware and software used by Defendant GG HOMES, Inc has the capacity to store and/or produce numbers using a random or sequential number generator, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer in that it is capable of sending numerous text messages and calls simultaneously, without human intervention. The distinct bubble-popping sound and the long silent pause were, in Plaintiff vast experience, the clear indication that an ATDS robo-dialer was used by Defendant for the calls and the use of the short code is highly indicative of an ATDS.

65. The text messages were sent by Defendant with its knowledge and approval of the CEO of Defendant. Defendant GG HOMES, Inc knew about the messages, received the benefits of the messages, directed that the messages be sent, and/or ratified the sending of the messages by its employees using

Defendant's computers and software. The text messages were generic which indicates an ATDS was used by Defendant.

66. All of the text messages were sent via an ATDS at the direction and oversight of Defendant GG HOMES, Inc. Said Defendant knew about, directed, ratified, and benefitted from the solicitation text messages that it directly sent to Plaintiff.

67. Based on Plaintiff's vast knowledge and experience with these types of telemarketers, the equipment used to send the texts at issue has the capacity to use a random or sequential number generator in the process of storing numbers from a pre-produced list or a self-generated list within the device itself for texting at a later date.[8] Plaintiff alleges that this is exactly what Defendant GG HOMES, Inc has done.

68. The equipment at issue, in this case, also has the capacity to produce telephone numbers using a random or sequential number generator. Specifically, the texting software, by virtue of being inextricably linked to a computer operating system, employing a short code, has the capacity to generate random or sequential telephone numbers. One of Defendant's

[8] 21-cv-01646-L-BLM, PageID.6, ECF No. 1, *Williams vs. Zeeto, LLC* (SD CA 9/20/21)

employees, Luke, expressly admitted that they were using an "auto dialing computer" to make the calls and send out the text messages in order to get California residents to buy real estate services. Defendant earns and gets paid a commission for each property they sell.

69. By sending unsolicited text messages as alleged herein, Defendant GG HOMES, Inc has caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition to the wear and tear on his phone, interference with the use of his phone, consumption of battery life, loss of value realized for monies he paid to his AT&T carrier for the receipt of such messages, and the diminished use, enjoyment, value, and utility of his telephone plan. Furthermore, Defendant GG HOMES, Inc sent the messages knowing they trespassed against and interfered with Plaintiff's use and enjoyment of, and the ability to access, his phone, including the related data, software, and hardware components.

70. FCC regulations promulgated under the TCPA specifically prohibit Defendant from using an artificial or prerecorded voice to call Plaintiff's

Number for the purpose of advertising or telemarketing absent Plaintiff's prior express written consent. See 47 C.F.R. § 64.1200(a)(2)[9]

## PLAINTIFF EWING'S ALLEGATIONS DIRECTLY AGAINST DEFENDANT GG HOMES, INC.

71. Defendant GG HOMES, INC called or texted Plaintiff Ewing, on his DNC registered personal cell phone, 619-719-9640, on the following dates:

a. June 28, 2024 from 619-816-3745 at 7:55 AM -- Call

b. June 28, 2024 from 858-215-5663 at 9:39 AM – Call

c. June 29, 2024 from 858-371-1502 at 10:29 AM—Call

d. June 30, 2024 from 619-816-3745 at 10:31 AM—Call

e. July 6, 2024 from 858-229-3792 at 3:13 PM—Call

f. July 7, 2024 from 619-929-8442 at 8:10 AM—Call

g. July 8, 2024 from 619-929-8442 at 3:46 PM—Call

h. July 9, 2024 from 619-929-8442 at 10:12 AM—Call

i. July 10, 2024 from 619-929-8442 at 4:50 PM—Call

j. July 11, 2024 from 619-929-8442 at 8:50 AM—Call

k. July 11, 2024 from 858-229-3792 at 7:59 AM—Call

---

[9] 21-cv-02040-CAB-KSC, PageID.4 in ECF No. 1, *Johnson vs. Digital Media Solutions*.

l. July 11, 2024 from 53747 at 10:22 AM—Text

m. July 11, 2024 from 53474 at 11:34 AM—Text

72. The above dates, times, from what number and to what number is all the detail that is required under the TCPA. **Nothing else is necessary at the initial pleading stage.** *See* Rule 8 and Rule 10, FRCP. The Court is also respectfully requested to see each footnote and the cases that Plaintiff has cited from. Also, calls prior to 8:00 AM are expressly prohibited.

73. There were, thus far, 11 calls (($1,500 + $1,500 +$5,000) *11 = $88,000)) and 2 text messages ($1500 + $1500 times 2 = $6,000) from Defendant GG HOMES, Inc.

74. Defendant's employee Luke admitted to Plaintiff that he did not dial Plaintiff's phone number by finger, but rather was using computer software that generates, stores and automatically dials the phone numbers without any input from him. "Luke" stated that once a person hit's "1" then the software connects or transfers the call to either him or another telemarketer in the office in San Diego.

75. Replying "STOP" did not work to prevent additional spam solicitation texts. Plaintiff received additional subsequent text messages from Defendant GG HOMES, Inc.

76. The pre-recorded voice message at the beginning of each telephone solicitation call from Defendant (not a 3rd part or agent) stated: "*Are you interested buying a home or selling your current home. Press one to be connected to one of our licensed real estate specialists*" or similar words to that affect. The TCPA and CLRA do not require a plaintiff to be able to memorize and regurgitate every word that every telemarketer states.

77. Defendant GG HOMES, Inc was calling to sell its services to Plaintiff who was in California at the time.

78. Plaintiff Ewing registered his cell phone number on the DNC on February 16, 2012, for the express purpose that he would not receive unsolicited calls or text messages.

79. Plaintiff Ewing's phone number is not associated with a business and is used for personal, private residential use only. Notwithstanding, mixed use phones are still fully protected.

80. The text messages that Plaintiff received are solicitations encouraging the purchase of Defendant's real estate services.

81. The text messages were sent by Defendant GG HOMES, Inc directly and not through a third party. The text messages were sent at Defendant GG HOMES, Inc's direction, command and control, that is, Defendant ordered

each of its W-2 employees to respond to the calls that it made after it sent out the automatic solicitations.

82. Defendant GG HOMES, Inc expressly and overtly controlled the exact generic content of the text messages.

83. The text messages, unlike the emails, did not address Plaintiff by name. Thus they were sent by, with and through an automatic telephone dialing system or robo-dialer.

84. Said dialing system has the capacity to generate, store and randomly dial phone numbers and to dial those numbers without human intervention.

85. Plaintiff Ewing never provided his phone number or his consent to Defendant GG HOMES, Inc to receive any solicitation from them or on their behalf. Upon information and belief, GG Homes is expressly prohibited and obligated to, in fact, **not** dial 619-719-9640. Prior to receiving the text messages from GG Homes, Plaintiff had never visited any location or internet web page owned, used, or controlled by Defendant GG HOMES, Inc.

86. The unauthorized solicitation telephone text messages that Plaintiff received from Defendant, as alleged herein, have harmed Plaintiff Ewing in the form of annoyance, nuisance, and invasion of privacy, and disturbed the

use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

87. The phone calls placed to Plaintiff's cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. §227 (a)(1) as prohibited by 47 U.S.C. § 227 (b)(1)(A). At one or more instance during these calls, Defendant GG HOMES, Inc utilized an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

88. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

89. Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

90. Plaintiff is not a customer of Defendant's real estate services and has never provided any personal information, including his cellular telephone number, to Defendant GG HOMES, Inc for any purpose whatsoever. In addition, Plaintiff told Defendant GG HOMES, Inc at least once to stop contacting him and Plaintiff has been registered on the Do-Not-Call Registry for at least thirty (30) days prior to Defendant GG HOMES, Inc contacting him.

Accordingly, Defendant GG HOMES, Inc never received Plaintiff' "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).[10]

91. Plaintiff did not have a personal relationship with Defendant GG HOMES, INC at any point in time.[11]

92. Defendant GG HOMES, INC did not make the telephone solicitations in error.

93. When Plaintiff answered calls from Defendant GG HOMES, Inc, he heard a prerecorded message and had to wait on the line to be transferred to a live representative after pressing "1."

94. Defendant's initial portion of each call shown above, was a violation of 47 USC §227(b)(1)(A) because it was initially a prerecorded artificial voice. That means the test of whether an ATDS was used is not relevant at this time.

95. The Complaint alleges 11 of the 13 telephone calls violated of CLRA – Cal. Civ. Code §1770(a)(22)(A), but not the text messages sent without consent.

---

[10] 21-cv-01204-H-WVG at PageID.4 in ECF No. 1, *Benitez vs. United Debt Settlement, LLC.*
[11] 21-cv-01123

Since Plaintiff demanded that Defendant stop calling at the end of the first call, then Plaintiff asserts a CLRA violation on 10 of the calls alleged herein.

96. Defendant GG HOMES, Inc, through its employee Luke and others, called Plaintiff to sell its real estate services. The calls were not placed by an unknown third party. Defendant physically initiated the calls and physically sent the text message with their auto dialing software and equipment.

97. Since Plaintiff registered his personal private cellular phone, 619-719-9640, on www.donotcall.gov more than 31 days prior to the first call and the first text from Defendant, then Defendant's failure to scrub their calling lists against the DNC is a violation of 27 USC §227(c).

98. Defendant's illegal calls and illegal texts were and are the cause of Plaintiff damages, including statutory damages, which have been held to be sufficient damage and sufficient injury to pass Article III standing.

99.Defendant called Plaintiff's cellular telephone number, using an automatic telephone dialing system with a prerecorded artificial voice message introduction, without Plaintiff's prior express written consent, by robo-dialing Plaintiff's DNC registered phone number, devoid of any pre-existing or established business relationship. Further, Defendant continued to

seriously and substantially harass and annoy Plaintiff after Defendant was expressly and explicitly told to cease and desist.

100. Since Defendant has failed to provide a copy of its DNC policies and training procedures, within 30 days, then Defendant has violated the FCC and FTC regulations that are incorporated into 27 USC §227.

101. Plaintiff has studied the code used to program predictive dialers and other similarly-functioning autodialers in the past, with the assistance of his expert Jeff Hansen and software engineers fluent in Java, and have found that such autodialers, when used in automated mode, execute code that relies upon random or sequential number generation to both store and produce numbers to be dialed by the dialer. For instance, a common "parser" used in SMS blasters and predictive dialing coding integrates the following open-source Apache code into an autodialing dialing platform:

```
730 if (!this.recordList.isEmpty()) {
731 this.recordNumber++;
732 final String comment = sb == null ? null : sb.toString();
733 result=newCSVRecord(this,this.recordList.toArray(Constants.E
MPTY_STRING_ARRAY), comment,
734 this.recordNumber, startCharPosition);
735 }
736 return result;
737 }
```

102. These lines of code, and specifically the "++" in line 731, represent an operator token that generates sequential numbers as part of a loop. This loop is used to select which number from the CSV file, will be dialed, and produce that number to the dialer using a CSV parser. Such programs can dial thousands of consumers in mere seconds, without any human intervention whatsoever, based on whatever abandonment rate is targeted by the operator of the dialing platform. The sequential number generator in the code above is executed in the process of mass predictive dialing. The program cannot function, and therefore cannot dial any phone numbers at all, without this sequential number generator.

103. Plaintiff alleges that Defendant GG Homes used a predictive dialing system with similar capacity to autodial numbers as shown above. Functionally, that is simply how predictive dialers work. They rely on random or sequential number generators to instruct the data set to produce telephone numbers to the dialer. Without this key component, a dialing campaign would require an agent to manually place the call, through organic decision making, or as was the case in *Duguid v. Facebook*, through some other organic one-to-one triggering event that instructs the dialer to place the call. Plaintiff will not be able to demonstrate whether the code for

Defendant's (GG Homes) dialing system contains such random or sequential number generators without doing discovery and obtaining the code for the dialing platform. Plaintiff makes these allegations on information and belief based on the volume of calls he and other plaintiffs against this Defendant received, the impersonal nature of the text, and the fact that the calls were spoofed, which are all indicia that they were autodialed with a predictive dialer.

104. The problem with these known realities is that because Plaintiff does not and could not ever have access to Defendant's proprietary code, which is in its sole possession, Plaintiff cannot allege with any more specificity that the system's code contains such language. However, based on detailed discussions with experts and years of litigation and expertise surrounding such technology, Plaintiff has a legitimate and sufficient good faith basis to make these allegations, and assert that if the system is a traditional predictive dialer as alleged, then it will have some variation on the coding that is described herein, which will undoubtedly include either random or sequential number generators that are being executed in conjunction with storing and dialing the telephone numbers, including the dialing of Plaintiff's phone number.

105. Plaintiff hereby alleges and asserts that Defendant's phone dialing system must have used a random or sequential number generator that actually generated Plaintiff's phone number, even though Defendant was expressly obligated to not dial 619-719-9640, and dialed Plaintiff's number without human intervention and without consent of Plaintiff.

106. Congress, when it passed the TCPA, did not expect, contemplate nor require plaintiffs to assert the level of factual detail that Defendant is now, wrongly, demanding. If Defendant has its way, which it does not, then no person would ever be able to plead a case for violation of the TCPA. But that is exactly what Defendant wants. Defendant wants no victim to be able to sue any telemarketer, ever.

## FIRST CLAIM FOR RELIEF

**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227(b)(1)(A) and (c)(5))**
**(Against Defendant GG HOMES, INC)**

107. Plaintiff Ewing repeats and realleges paragraphs 1 through 106 of this Complaint and incorporates them by reference.

108. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her

telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

109. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

110. Defendant GG HOMES, Inc violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry participants (including Ewing) who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

111. Defendant GG HOMES, Inc violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone text message in a 12-month period made by or on behalf of Defendant GG HOMES, Inc in violation of 47 C.F.R. § 64.1200, as described above.

112. Defendant GG HOMES, Inc failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing text messages using an automatic telephone dialing system; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

113. As a result of Defendant's conduct as alleged herein, Plaintiff suffered actual damages and, under section 47 U.S.C. § 227(c), is entitled, *inter alia,* to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

114. Defendant GG HOMES, Inc used an ATDS to both send text messages and to dial Plaintiff's phone number to play its artificial prerecorded voice message.

115. By sending unsolicited text messages to Plaintiff's cellular telephone without prior express consent, and by utilizing an ATDS, Defendant GG HOMES, Inc violated 47 U.S.C. § 227(b)(1)(A)(iii).

116. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

117. Defendant GG HOMES, Inc. violated 47 USC §227(b)(1)(A) by using an artificial prerecorded voice message and by sending generic unsolicited text messages with an ATDS, for which Plaintiff is entitled to $500 for each negligent violation and $1500 for each willful or knowing violation.

118. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*.'" The Report and Order, in turn, provides as follows:

"The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to

calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers."

119. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing call made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's

name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect

them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

120. Here, Defendant GG HOMES, INC sent Plaintiff Ewing multiple unsolicited text messages after he had submitted valid "STOP" and "BYE" requests.

121. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## SECOND CLAIM FOR RELIEF
**Consumer Information Privacy Act**
**(Violation of CA Penal Code §632.7 and §637.2)**
**(Against Defendant GG HOMES, INC)**

122. Plaintiff Ewing repeats and realleges paragraphs 1 through 106 of this Complaint and incorporates them by reference.

123. The foregoing acts and omissions of Defendant GG HOMES, INC constitute numerous and multiple knowing and/or willful violations of

California's Invasion of Privacy Act. There is no claim for any PC §632 land-line violation in the lawsuit.

124. As a result of Defendant's knowing and/or willful violations of PC §632.7 and §637.2, Plaintiff is entitled to statutory damages of $5,000 per call that was illegally recorded without Plaintiff's knowledge or consent.

125. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## THIRD CLAIM FOR RELIEF
**Consumer Legal Remedies Act**
**(Violation of CA Civil Code §1770(a)(22)(A))**
**(Against Defendant GG HOMES, INC)**

126. Plaintiff Ewing repeats and realleges paragraphs 1 through 106 of this Complaint and incorporates them by reference.

127. Defendant GG HOMES, INC used and employed an artificial voice, prerecorded message, without consent or permission in advance, to initiate each call to Plaintiff. Defendant was not selling loans or mortgages.

128. Plaintiff suffered harm by Defendant's violation of California Civil Code §1770(a)(22)(A), inter alia, through the loss of use of his phone during each call as well as annoyance and harassment caused, proximately and actually, by Defendant GG HOMES, INC. Damages of $2500 per call for

11 of the 13 calls are hereby requested based on the harassment and civil stalking engaged in by Defendant.

129. Defendant's acts of unfair competition include, but are not limited to, the following: (1) directly violated the TCPA at 47 USC §227(c) and its regulations at 47 C.F.R. §64.1200(c)(2), by engaging in a pattern or practice of initiating telephone solicitations to Plaintiff's residential telephone, whose telephone number was listed on the National Do Not Call Registry, and (2) directly violated 47 C.F.R. §64.1200(a)(2) and 47 USC §227(b)(1)(B), by engaging in a pattern or practice of initiating telephone solicitations to Plaintiff's residential telephone line, using artificial or prerecorded voices to deliver a message without the prior express consent of the called party and where the call was not initiated for emergency purposes or exempted by rule or order of the Federal Communications Commission under 47 USC §227(b)(2)(B).

130. Defendant has directly violated California Business & Professions Code section 17592(c)(1) by making or causing to be made telephone calls to Plaintiff's California telephone number listed on the National Do Not Call Registry and seeking to rent, sell, promote, or lease goods or services during those calls.

131. Plaintiff is entitled to, and hereby seeks, both punitive and exemplary damages to send a clear message to Defendant and others like Defendant to cease and desist from violation of the law.

132. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ewing, individually, prays for the following relief:

a) Damages as provided by statute and in the discretion of the Court;

b) An award of actual and/or statutory damages and costs plus treble damages if willful or knowing violations are shown;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) As a result of Defendant's negligent violations of 47 U.S.C. §227(b)(1) and §227(c)(5), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B) plus treble damages ($1,500 per call and per text), a total of $3,000 per call under the TCPA;

e) An injunction requiring Defendant to cease all unsolicited calling activity that violates the TSR, the FTC Act and the TCPA, and to otherwise protect

the interests Plaintiff Ewing;

f) $5,000 for each call the was illegally recorded without Plaintiff's consent,

g) $2,500 for each of the 11 calls that contained a pre-recorded artificial voice message at the beginning of each call.

h) $1,500 for each violation of 47 C.F.R. §64.1601(e) as well as 16 C.F.R. §310.4(a)(7) and 47 C.F.R. §64.1200(c)(2), (d)(1), (d)(2) and (d)(4).

h) for exemplary damages against Defendant in an amount to be determined with exactness at trial herein; and

i) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Ewing requests a jury trial.

Dated this 13th day of August, 2024.

/s/ Anton Ewing

Anton A. Ewing, Plaintiff

## PROOF OF SERVICE

I, Anton Ewing, am over 18, a pro per plaintiff in this matter. I have filed this First Amended Complaint and had it served on Defendant as follows:

**3:24-cv-1223 JLS MSB Notice has been electronically mailed to:**

I have also emailed a copy of this document to Defendant directly at the email address he uses to communicate with me at:

PRuane@Manatt.com

Additionally, I mailed this pleading, first class postage prepaid, to:

**MANATT, PHELPS & PHILLIPS, LLP**
CHRISTINE M. REILLY (CA Bar # 226388)
E-mail: CReilly@Manatt.com
PATRICE RUANE (CA Bar # 347128)
E-mail: PRuane@Manatt.com
2049 Century Park East Suite 1700
Los Angeles, CA 90067

All ECF users in this case have been served with a true and accurate copy via email from the CM/ECF system. All CM/ECF members agree and consent to service via email from CM/ECF.

I swear under penalty of perjury that the above was served as stated.

Dated: August 13, 2024

/S/ Anton Ewing
Anton Ewing